NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0761n.06

No. 08-2127

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

**Dec 15, 2010**

LEONARD GREEN, Clerk

GEORGE BENTON,

Petitioner-Appellant,

v.

RAYMOND BOOKER,

Respondent-Appellee.

)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF
MICHIGAN

Before: MARTIN, GIBBONS, and KETHLEDGE, Circuit Judges.

KETHLEDGE, Circuit Judge. George Benton appeals the district court's denial of his petition for a writ of habeas corpus. We reject his arguments and affirm.

I.

In January 2000, Arthur Pugh was shot and killed. The State of Michigan originally charged both Benton and his friend, Kumonte Alexander, with Pugh's murder. The State dropped the murder charge against Alexander after he agreed to testify against Benton. In May 2001, a Michigan state-court jury convicted Benton of second-degree murder and firearm possession during a felony. Benton thereafter lost his direct appeal and was denied state postconviction relief.

Benton filed a pro se petition for habeas corpus in federal district court in 2006. He was transferred from one state prison to another in 2007. In 2008, a magistrate judge recommended

rejection of Benton's claims and denial of the writ, but the district court mailed the report to Benton's old prison facility rather than his new one. Thus, Benton apparently never received it. He consequently did not object to it either; and for that reason the district court adopted the magistrate's recommendation, denied the writ, and entered judgment for the warden.

The court mailed these orders to Benton's new facility. Six days after receiving them, Benton filed a motion for reconsideration under Federal Rule of Civil Procedure 60(b)(1). He argued that his failure to object to the magistrate's recommendation was excusable because he had never received it. The district court denied the motion. This appeal followed.

II.

The State does not argue that Benton's failure to object to the magistrate's recommendations precludes our review of his claims. So we review the district court's disposition of his claims de novo. *See Babick v. Berghuis*, 620 F.3d 571, 576 (6th Cir. 2010).

Benton presents five claims in his federal habeas petition. The extent to which these claims are procedurally defaulted is a nettlesome question; the extent to which they are meritless, much less so. We therefore "cut to the merits here," since the procedural analysis "adds nothing but complexity to the case." *Id.*

Benton first claims that an "obvious" and "blatant[]" evidentiary violation by the Michigan trial court deprived him of due process and fundamental fairness. Before trial, and while still charged with Pugh's murder, Alexander provided a written statement to police identifying Benton as the shooter. Alexander later testified at trial that Benton was the shooter. During cross, Benton's counsel questioned Alexander's credibility. The State then moved to admit Alexander's statement

as a prior consistent statement. The court admitted the statement over Benton's objection. Benton now argues that the statement's admission impermissibly enhanced Alexander's credibility at trial. We disagree with that argument on its own terms—Benton could and did challenge Alexander's motivations in making the prior statement, in addition to attacking his credibility generally at trial. And in any event the statement did not deny Benton a fundamentally fair trial. *See Biros v. Bagley*, 422 F.3d 379, 391 (6th Cir. 2005).

Benton also claims that prosecutorial misconduct denied him a fundamentally fair trial. During closing arguments, Benton's own counsel stated, "if it doesn't fit . . . . you must acquit." On rebuttal, the State called this the "O.J. Simpson defense." Benton now complains that this reference was so unfair as to constitute a due-process violation. We disagree, since Benton opened the door to it. *See United States v. Barnett*, 398 F.3d 516, 523 (6th Cir. 2005) ("rebuttal statements that similarly respond to a defendant's closing argument are not prosecutorial misconduct").

Next, Benton claims his sentence was unconstitutionally disproportionate to his crime, for two reasons. First, he says that his sentence—25-50 years imprisonment—was unwarranted in light of his criminal history and the circumstances of the murder. The claim is meritless. Benton shot a man who gave him a fake $20 bill. The trial judge sentenced Benton to less than the statutory-maximum sentence. In doing so, the judge did not violate the Constitution. *See United States v. Layne*, 324 F.3d 464, 474 (6th Cir. 2003).

Second, Benton argues that the trial judge based his sentence on inaccurate information. "[A] violation of due process exists when a sentencing judge relies upon erroneous information." *United States v. Wilson*, 614 F.3d 219, 224 n.3 (6th Cir. 2010). Here, Benton claims that his sentencing

judge relied on a mistaken assumption that he had been convicted of certain previous offenses. But the judge never stated that Benton had been *convicted* of these offenses. Rather, the judge's comments at sentencing reflect merely his belief that Benton was involved in them. And Benton presents no evidence that the judge's belief was wrong.

Finally, Benton claims that his trial and appellate counsel were constitutionally ineffective. These claims are derivative of the ones we have already rejected. So we reject them as well.

The district court's judgment is affirmed.